# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>**LORETTA MERRY BOWARD,**<br><br>       **Debtor**<br>_____<br><br>**PAUL ALLIGUIE,**<br><br>       **Plaintiff**<br><br>v.<br><br>**POWER INNOVATORS, INC.; LORI BOWARD; & DOES 1 through 100,**<br><br>       **Defendants** | Chapter 7<br>Case No. 03-17995-RS<br><br><br><br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 03-1520-RS** |

### MEMORANDUM OF DECISION

  Paul Alliguie obtained a pre-petition arbitration award in the amount of $1,058,030 (and a judgment confirming that award) against Lori Boward, the Debtor and defendant herein. He did so in a mandatory arbitration proceeding under California law. Alliguie now seeks a determination in this Court that the claim arising from that award and judgment is non-dischargeable in Boward's Chapter 7 case.[1]

  For the reasons set forth below, the Court finds that Alliguie has failed to establish the elements necessary for non-dischargeability. The Court will therefore dismiss Alliguie's

---

[1] Alliguie seeks relief herein only against Boward. Accordingly, the Court will dismiss the Complaint as to those defendants without prejudice.

complaint herein.

## Procedural Status

Alliguie sued Boward in California state court in September 2002. He submitted the matter to mandatory arbitration under California law and obtained an arbitrator's award in August 2003 and an arbitration judgment incorporating that award in September 2003.[2] Thereafter, on September 24, 2003, Boward commenced the within Chapter 7 case ("Case"). In December 2003, Alliguie sued Boward in this Court, seeking a determination that the claim arising from the arbitration award and judgment should be excepted from Boward's discharge under Section 523(a)(2)(A) for fraud and Section 523(a)(6) for willful and malicious injury[3] ("Complaint"). 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(6).

On August 23, 2006, I conducted a trial of the Complaint. Boward presented evidence through her own testimony and the admission of various documents. Alliguie declined to participate in the trial, although he and his counsel were in attendance. Rather, he argued that the arbitration judgment precluded trial of the operative issues raised in the Complaint bearing on fraud and conversion. He invoked the doctrine of collateral estoppel (or issue preclusion) as formulated and applied under California law. Thus, he did not seek to admit any documents, did not offer any testimony, and did not examine Boward, although afforded the opportunity to do so.[4]

---

[2]The award and initial judgment were in the amount of $1,712,850, later corrected to $1,058,030, the amount of the claim that is the subject of this adversary proceeding.

[3]Alliguie alleges willful and malicious injury and conversion interchangeably in his pleadings. I treat the latter as within the contemplation of the former. *See* 4 Collier on Bankruptcy ¶ 523.12 (15th ed. rev.)

[4]Alliguie requested judicial notice of various items from the California proceedings, which the Court granted in part. He also argued his position regarding the collateral estoppel effect of the arbitration judgment and submitted a supporting post-trial brief.

Having considered the submissions, the admissions, the testimony, the documents, the arguments and applicable law, I now render my decision.

### **Findings of Fact**

1. In September 2002, Alliguie filed a complaint against Lori Boward, Power Innovators, Inc. ("Company"), and 100 Does in California state court ("California Complaint"). He alleged facts in support of six causes of action: breach of contract; breach of the covenant of good faith and fair dealing; negligent misrepresentation; fraud and deceit; imposition of constructive trust; and conversion.

2. The allegations by Alliguie concerned a $210,000 loan made by Alliguie to the Company, a start-up power plant construction venture located in McClellan, California ("Loan"). The Loan was made in accordance with a debenture issued by the Company to Alliguie and signed by Boward on behalf of the Company ("Debenture").

3. At the time of the issuance of the Debenture, Boward served as president and chief executive officer of the Company.

4. Boward did not personally guaranty the Debenture or the Loan.

5. The Debenture is dated November 9, 2001, matured on January 9, 2002 and remains unpaid. [5]

6. The Company employed Alliguie as a business development manager during the

---

[5] The Debenture provided that, if the Loan was unpaid at maturity, the Company would assign to Alliguie certain identified accounts receivable and additional shares of the Company's common stock. Alliguie alleges that Boward made several false representations to him regarding that provision: that the Loan would be of short duration, that it would be repaid from the identified receivable, and that the shares had a value determinable by reference to a public stock exchange. He also alleges that the identified receivable was used by the Company for its own purposes (and not to repay the Loan). These allegations form the basis for his fraud and conversion causes of action in the Complaint. Boward denies the allegations both in her California Complaint and here.

period October 15, 2001 through September 10, 2002, when he voluntarily resigned.

7. Alliguie made the Loan under the Debenture to assist the Company in meeting its payroll, necessitated by delays in the infusion of working capital by the Company's investors.

8. Alliguie served the California Complaint on the Company and Boward at the Company's address.

9. Boward and the Company answered the California Complaint, denying its allegations. Thereafter, neither the Company nor Boward appeared or was represented in the California proceedings.[6]

10. In late January/early February 2003, Boward left the Company and relocated to Massachusetts where she now resides.

11. In August 2003, an arbitrator heard Alliguie's claim on account of the Loan and the Debenture. He did so in accordance with California law whereby the presiding court refers certain matters to an arbitrator for non-binding determination. The attributes of this arbitration process are set forth in Cal. Code Civ. Pro. §§ 1141.10 *et seq* and Cal. Rules of Civil Court, Rules 3.810 through 3.830. The salient attributes are the following: (a) the process is intended to be informal hence the rules for discovery, evidence, and hearing are subject to limitations not typically applicable at trial; (b) the arbitrator may make a record of the proceeding but is not required to do so; (c) if he does make a record, that record is not subject to discovery, and no other record of the proceeding may be made in any event; (d) no findings of fact or conclusions of law are required; (e) the arbitrator's award is not subject to appeal; (f) the parties have the right to a de novo trial if requested within 30 days of the filing of the award with the clerk of the

---

[6]Boward contends that she had neither notice nor actual knowledge of the arbitration proceeding, and she seeks dismissal on due process grounds. She acknowledges that she received and answered the California Complaint. Given my findings, conclusions and rulings herein, I need not, and do not, decide the due process issue.

presiding court; (g) absent a timely de novo trial request, the award is entered in the judgment book of the presiding court and has the same force and effect as a judgment in any civil action or proceeding (excluding the right of appeal); and (h) the presiding court issues a judgment in arbitration but makes no specific findings of fact or conclusions of law with respect to the allegations of the case ("Arbitration Proceeding").

12. In Alliguie's case, and in Boward's absence, the arbitrator apparently took evidence and, in any event, issued an award against Boward for $1,712,850 (as noted above, later corrected to $1,058,030), noting that (a) neither the Company nor Boward appeared or was represented in the Arbitration Proceeding and (b) there was a prima facie showing of fraud warranting treble damages ("Arbitration Award").[7] Alliguie has not submitted or disclosed any such evidence here and has not presented any findings of fact or conclusions of law by the arbitrator (nor has Alliguie represented that the arbitrator made any such findings or conclusions).

13. After the Arbitration Proceeding, the arbitrator filed the Arbitration Award with the clerk of the presiding court and the court issued a judgment in arbitration (incorporating the Arbitration Award) against Boward ("Arbitration Judgment").

14. Thereafter, Boward commenced the Case.

## Conclusions of Law

1. To determine the effect of a state court judgment, federal courts are required to apply the preclusion law of the rendering state. *See Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 87 (2nd Cir. 2000).

2. Alliguie bears the burden of proof as to the elements of fraud under Section

---

[7]The arbitrator makes no reference to conversion.

523(a)(2)(A) and conversion under Section 523(a)(6), and must meet that burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991). *See In re Spigel,* 260 F.3d 27 (1st Cir. 2001); and *Kawaauhau v. Geiger,* 523 U.S. 57 (1998). *See also* 4 Collier on Bankruptcy ¶ 523.08 (fraud) and ¶523.12 (conversion) (15th ed. rev.).

      3.    Alliguie also bears the burden of proof as to the preclusive effect of the Arbitration Judgment for collateral estoppel purposes under California law, in that he must demonstrate that: (a) the issues sought to be precluded in this Court are identical to those decided in the Arbitration Proceeding; (b) those issues were actually litigated there; (c) those issues were necessarily decided there; (d) the decision there was final and on the merits; and (e) the party against whom preclusion is sought was the same as, or in privity with, the party there.  See *Pacific Lumber Company v. State Water Resources Control Board*, 126 P.3d 1040, 1054 (2006).

      4.    Alliguie contends that he has met the requirements for collateral estoppel.  In particular, he argues that the "actually litigated" component is met as to an issue where "...it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined...." citing *People v. Carter* (2005), 36 Cal.4th 1215, 117 P.3d 544 (*cert. den.* 126 S. Ct. 1625). While the issues necessary for a determination of fraud or conversion may have been properly *raised* in the Arbitration Proceeding, it is not clear that they were *determined* and, if so, on what basis.  Unlike here, *Carter* involves a jury verdict in a criminal trial, not a civil action in arbitration proceeding.  There is a significant difference between these events, not least that the former event is judicial while the latter is not.  This difference is recognized, implicitly and explicitly, in *Flynn v. Gorton*, 207 Cal.App.3d 1550, 1554-1555, 255 Cal. Rptr. 768, 771-772 (Cal. App. 4th 1989), holding that a final decision in a California mandatory arbitration should not have collateral estoppel effect in a later judicial proceeding.

6

5. The *Flynn* rationale is persuasive. Where there is no record permitted and no findings or conclusions required (and, as here, none issued), it is difficult, indeed virtually impossible, to determine what issues were actually litigated and how they were resolved. *See Flynn*, 255 Cal. Rptr. at 772. Here, I find that Alliguie has failed to establish that the issues raised in the Complaint were actually litigated in the Arbitration Proceeding and I rule that the Arbitration Judgment does not preclude trial of the Complaint as a matter of collateral estoppel.[8]

6. Alliguie relied entirely on the preclusive effect of the Arbitration Judgment in the determination of the Complaint. He adduced no independent evidence in support of any of the elements of fraud under Section 523(a)(2)(A) or conversion under Section 523(a)(6). He failed to rebut the testimony of Boward in which she denied the allegations of the Complaint and established by credible testimony that she (a) did not personally guaranty the Loan or the Debenture[9]; (b) made no false representations to Alliguie in connection with the Debenture (including as to the receivables assignment, the repayment of the Loan and the value of the Company's shares ); (c) had no intent to defraud or to deceive him; and (d) had no intent to injure him (or to do an act she knew was substantially certain to injure him).

7. Thus, Alliguie has failed (a) to establish the preclusive effect of the Arbitration Judgment on the Complaint and (b) to otherwise establish the elements of fraud or of willful and malicious injury necessary for a determination of an exception to discharge on account of the Loan and Debenture transaction under Section 523(a)(2)(A) or Section 523(a)(6).

## **Conclusion**

---

[8] In making this ruling, I do not decide that there can never be a collateral estoppel effect in respect of a California arbitration proceeding, only that here, in the absence of any record, findings or conclusions, such effect may not be given to the Arbitration Judgment.

[9] Alliguie nowhere alleges otherwise.

7

Accordingly, the Complaint will be dismissed. A separate judgment will issue.

Date: October 9, 2007                    _____
                                          Robert Somma
                                          United States Bankruptcy Judge

cc:     David G. Baker, Counsel to Loretta M. Boward
        Leo F. Donahue, Counsel to Paul Alliguie